181 N.J. Super. 529 (1981)
438 A.2d 570
JOSEFINA VASQUEZ AND ELLEN HOWARD, PLAINTIFFS-APPELLANTS,
v.
JOHN J. HORN, COMMISSIONER, DEPARTMENT OF LABOR AND INDUSTRY, STATE OF NEW JERSEY; JOSEPH S. VIVIANI, DIRECTOR, DIVISION OF UNEMPLOYMENT AND TEMPORARY DISABILITY INSURANCE, STATE OF NEW JERSEY, DEFENDANTS-APPELLANTS.
Superior Court of New Jersey, Appellate Division.
Argued November 2, 1981.
Decided November 12, 1981.
*531 Before Judges ALLCORN, FRANCIS and MORTON I. GREENBERG.
Madeline L. Houston of the Passaic County Legal Aid Society argued the cause for appellants.
Michael S. Bokar, Deputy Attorney General, argued the cause for respondent (James R. Zazzali, Attorney General, attorney; John J. Degnan, former Attorney General).
The opinion of the court was delivered by MORTON I. GREENBERG, J.A.D.
Appellants appeal from the adoption on October 23, 1980 of a regulation, N.J.A.C. 12:17-10.1 et seq., which specifies circumstances in which the Director of the Division of Unemployment and Temporary Disability Insurance will seek to recover or waive recovery of overpayments of unemployment benefits improperly paid to recipients of unemployment compensation. R. 2:2-3(a). Appellants have been determined in appropriate administrative proceedings to have been paid unemployment benefits not properly due under the Unemployment Compensation Law, N.J.S.A. 43:21-1 et seq. Thus, since respondents apparently propose to apply the regulation to appellants' indebtedness, no question is raised as to their standing to prosecute this appeal.
The regulation was adopted as a response to this court's decision in Howard v. Board of Review, 173 N.J. Super. 196 (App.Div. 1980).[1] There we held that when it is administratively determined that a person has been paid unemployment benefits not properly due, the Director of the Division of Unemployment and Temporary Disability Insurance should determine if a refund of the improper payment must be made. In reaching this *532 result we applied the plain language of N.J.S.A. 43:21-16(d), which provides that when payments have been improperly made, "such person shall be liable, if the director in his discretion directs recovery, either to have such sum deducted from any future benefits payable to him under this [Unemployment Compensation Law] or to repay to the division for the unemployment compensation fund, a sum equal to the amount so received by him...." Howard departed from our prior decision in Castellucci v. Board of Review, 168 N.J. Super. 301 (App.Div. 1979), which had ruled that an appeal tribunal, an administrative body established to hear appeals from initial decisions under the law, (see N.J.S.A. 43:21-6(d)), could order refunds. Subsequent to Howard, Castellucci reached this court after a remand and we adhered to our result in Howard. See Castellucci v. Board of Review, 174 N.J. Super. 289 (App.Div. 1980).
Our decision in Howard triggered an administrative response. When we decided that case it appeared that while the Department of Labor and Industry in a technical sense had contended that only the Director of the Division of Unemployment and Temporary Disability Insurance could order a refund of over-payments, in fact the determination that there was to be a refund was de facto being made by an appeal tribunal or the Board of Review, the highest administrative agency making adjudications under the law. See N.J.S.A. 43:21-10(d). Howard ruled that "the clear statutory authority for the ordering of refunds reposes solely, exclusively and personally in the Director." 173 N.J. Super. at 202. Thus, the Director was required to change his procedures which had relied on an appeal tribunal or the Board of Review.
The response to Howard was adoption by the Commissioner of Labor and Industry of the regulation now appealed, N.J.A.C. 12:17-10.1 et seq. That regulation reads as follows:
SUBCHAPTER 10. DETERMINATION AND DEMAND FOR REFUND OF UNEMPLOYMENT BENEFITS
12:17-10.1 Issuance of demand for refund
A demand for refund of unemployment benefits will be issued in each case when a determination of overpayment is made.

*533 12:17-10.2 Full waiver of recovery of overpayment
(a) Full waiver of recovery of overpayment will be granted by the Director when the claimant is deceased or permanently disabled and no longer able to work and overpayment is determined to be the result of Agency error or the claimant did not misrepresent or withhold any material fact in obtaining benefits. The claimant's entitlement to Social Security disability benefits will be considered as proof of disability. In the absence of such proof, an investigation will be conducted, including but not confined to an independent doctor's diagnosis and prognosis at the expense of the state.
(b) The demand for refund will advise the claimant of the right to waiver of recovery in the situations described above.
12:17-10.3 Repayment of unemployment benefits
All overpayments for which waiver of recovery is not granted pursuant to N.J.A.C. 12:17-10.2 must be repaid in full; provided that any claimant whose overpayment is determined to be the result of Agency error or who did not misrepresent or withhold any material fact in obtaining benefits will be given the additional option of having such overpayment offset by future benefits. Upon written request by the claimant, any such offset shall be limited to 50 per cent of the claimant's weekly benefit rate for each week of benefits subsequently claimed.
12:17-10.4 Certificate of debt
A certificate of debt will be filed in all cases where the amount of overpayment exceeds $200.00, except those cases where overpayment was caused by Agency error or where the claimant did not misrepresent or withhold any material fact pursuant to N.J.S.A. 43:21-16(d).
This administrative regulation sets down standards against which each case involving a potential claim for recovery of overpayments may be judged. In any case in which a determination of overpayment has been made a demand for repayment will be issued. N.J.A.C. 12:17-10.1. However, if the claimant is deceased or permanently disabled and no longer able to work, recovery will be waived, provided that it is shown that the overpayment was the result of error of the Division or that the claimant did not misrepresent or withhold any material facts in obtaining benefits. N.J.A.C. 12:17-10.2. The thrust of the regulation is thus to exonerate from liability the innocent claimant or his estate if he has died or is not likely by reason of disability to work in the future. In the event that such innocent claimant has not died or become disabled, there is no waiver of recovery of overpayment, but such innocent person may at his option elect to have the overpayment satisfied from future *534 benefits otherwise due. N.J.A.C. 12:17-10.3. The regulation makes no explicit reference to other cases in which the claimant has received benefits. The reason is quite clear. The intent of the regulation is that claimants who obtain benefits by misrepresentation or withholding of material facts are not to be granted waivers. Recovery from such persons may be had in any manner provided by law. N.J.S.A. 43:21-16(d). They may not satisfy their debts simply by agreeing to offset their liabilities against future benefits otherwise due.
Appellants assert that the regulation is invalid for four reasons: (1) it conflicts with the purpose of the Unemployment Compensation Law; (2) N.J.S.A. 43:21-16(d) contemplates an exercise of discretion incompatible with N.J.A.C. 12:17-10.1; (3) since the regulation was adopted by the Commissioner of Labor and Industry, it is not an exercise of discretion by the Director, and (4) the regulation denies due process. We deal with these contentions seriatim.
Clearly, the regulation cannot possibly conflict with the purpose of the law. The regulation only requires repayments of moneys that have been improperly paid. It is the purpose of the law to provide benefits to involuntarily unemployed persons who meet the specific eligibility conditions of the law. N.J.S.A. 43:21-2; N.J.S.A. 43:21-4. Since obviously the purpose of the law is not to provide for benefits to ineligible persons, a regulation providing for repayment of such benefits and thereby protecting the Unemployment Compensation Fund, (N.J.S.A. 43:21-9(a)), is necessarily in furtherance of the purpose of the law. See Krauss v. A. & M. Karagheusian, Inc., 13 N.J. 447, 455-456 (1953); Kugel v. Board of Review, 66 N.J. Super. 547, 550 (App.Div. 1961).
We recognize, of course, that it is also a purpose of the law that in some circumstances payments erroneously made need not be repaid. Thus recovery is to be sought if the Director "in his discretion" so determines. N.J.S.A. 43:21-16(d). We think that the approach of the regulation to this provision is entirely *535 appropriate. The regulation provides humanitarian relief for the good faith claimant. Such a person may, depending upon his personal circumstances, be excused from repayment. Otherwise he will be liable only to repay from future benefits otherwise due. The claimant acting fraudulently receives no relief from the regulation. We see nothing conflicting with the purpose of the law in this reasonable approach.
Appellants' assertion that the regulation precludes an exercise of discretion incompatible with N.J.S.A. 43:21-16(d) is suggested by our holding in Howard. There, after holding that the Director must make the determination that there will be a refund vel non, we stated the following:
We also point out that procedural due process requires that before a refund may be ordered there must be a meaningful opportunity for the person charged to present "all available defenses" and arguments in support of an assertion of reasons why, even though the payments should not have been made in the first place, a refund should not be ordered. Malady v. Board of Review, [166 N.J. Super. 523] supra. There appears to be no procedure presently ordered by the Legislature or administratively established to accommodate this procedural right. We see no reason, in view of the right of an administrative appeal from the determination of the Director to the Board of Review (N.J.S.A. 43:21-6(d) and (e); Malady v. Board of Review, supra at 533), why a testimonial hearing before the Director need be required, although our concern is, of course, with due process minimums: the Director has every right to order such a hearing if that is thought to be desirable. The form into which the administrative appeal to the Board is to be fitted has been expressly left by the Legislature to the prescription of the Board by its rules. N.J.S.A. 43:21-6(f).
Finally, we observe that the ultimate determination must set forth basic findings of fact, supported by the evidence, supporting the conclusions and that determination. Application of Howard Savings Inst., 32 N.J. 29, 52 (1960). This requirement is in order that the matter be decided on the evidence and not arbitrarily and, equally significantly, that the parties may understand and the appellate courts may properly review the action taken. Mackler v. Camden Bd. of Ed., 16 N.J. 362, 370 (1954). The reviewing court must not be required to speculate as to the rational basis of the conclusion. Cunningham v. Civil Service Dep't, 69 N.J. 13, 26 (1975). [173 N.J. Super. at 203]
We do not doubt that this court in Howard contemplated a case by case adjudication of whether recovery of overpayments would be required. In such circumstances an innocent but healthy claimant could resist a claim for refund by arguments that his personal circumstances were such that he should not be *536 liable for a refund even if collectible only from future benefits. Such an argument is not available under the regulation.
Nevertheless, the fact that we contemplated that the Director exercise his discretion with a particular procedure does not mean that he could not satisfy the legislative mandate of N.J.S.A. 43:21-16(d) in a different way. In fact, compelling authority has convinced us that it is not only not improper for the Director's discretion to be exercised through a uniform regulation, it is desirable. Thus, in In re Heller Suspension, 73 N.J. 292 (1977), the Supreme Court sustained a revocation of a pharmacy license on the ground that the pharmacist was guilty of "grossly unprofessional conduct." 73 N.J. at 296. It reached this result even though the conduct had not been specifically statutorily interdicted and was not violative of any specific regulation of the board of pharmacy. Nevertheless, the court cited with approval Securities and Exchange Comm'n v. Chenery Corp., 332 U.S. 194, 202, 67 S.Ct. 1575, 1580, 91 L.Ed. 1995, 2002 (1947) that "The function of filling in the interstices of the Act should be performed, as much as possible, through this quasi-legislative promulgation of rules to be applied in the future." 73 N.J. at 305. This, of course, is precisely what N.J.A.C. 12:17-10.1 does. It fills in N.J.S.A. 43:21-16(d) with specific rules. In R.H. Macy & Co. v. Taxation Div. Director, 41 N.J. 3 (1963), the Supreme Court reminded us that administrative agencies "should always be alert to their rule-making powers and not permit them to remain idle when their fair and timely exercise may suffice to avoid the suggested burdens of individual quasi-judicial determinations." 41 N.J. at 4. The admonition of Macy is particularly pertinent here since the record shows that the Division processes 14,000 refund cases a year. The affidavit of the Director of the Division points out quite reasonably that adoption of "the new clearly stated regulations to each overpayment situation significantly reduces the burden of making determinations in each case on an ad hoc basis." We do not see why we should invalidate a reasonable procedure adopted in conformity with the spirit of decisions of the Supreme Court.
*537 In reaching our result we have noted and been impressed by the decision in Fook Hong Mak v. Immigration and Naturalization Service, 435 F.2d 728 (2 Cir.1970). There the court held that the Attorney General of the United States had properly adopted and applied a rule that aliens who had obtained admission into the United States without visas were not eligible for adjustment of their status. The court declared as follows:
We are unable to understand why there should be any general principle forbidding an administrator, vested with discretionary power, to determine by appropriate rulemaking that he will not use it in favor of a particular class on a case-by-case basis, if his determination is founded on considerations rationally related to the statute he is administering. The legislature's grant of discretion to accord a privilege does not imply a mandate that this must inevitably be done by examining each case rather than by identifying groups. The administrator also exercises the discretion accorded him when, after appropriate deliberation, he determines certain conduct to be so inimical to the statutory scheme that all persons who have engaged in it shall be ineligible for favorable consideration, regardless of other factors that otherwise might tend in their favor. He has then decided that one element is of such determinative negative force that no possible combination of others could justify an affirmative result. By the same token he could select one characteristic as entitling a group to favorable treatment despite minor variables. Nothing in this offends the basic concept that like cases should be treated similarly and unlike ones differently. The administrator has simply determined that the one paramount element creates such "likeness" that other elements cannot be so legally significant as to warrant a difference in treatment. This may be an even "juster justice" than to accord different treatment because of trivial differences of fact; at least it is competent for the administrator to think so. The leading student of the problem has recently counseled:
When legislative bodies delegate discretionary power without meaningful standards, administrators should develop standards at the earliest feasible time, and then, as circumstances permit, should further confine their own discretion through principles and rules.
Davis, Discretionary Justice: A Preliminary Inquiry 55 (1969). [at 730].
Certainly, the regulation satisfies the Fook Hong Mak criteria. The regulation is rational. Further, by avoiding the establishment of criteria on a case-by-case basis, the Director establishes a plan that will result in consistent results. The establishment of criteria avoids the possibility of discrimination or unequal treatment inherent in a scheme of ad hoc adjudication. Finally, we observe that even absent established criteria fixed by regulation, we have no doubt that case-by-case adjudication would *538 ultimately result in the recognition of quasi-judicially developed criteria.
We see no difficulty caused by the fact that the regulation was adopted by the Commissioner of Labor and Industry rather than the Director. N.J.S.A. 34:1A-15 provided that the Director of the former Division of Employment Security "shall administer the work of such division under the direction and supervision of the commissioner...." In a reorganization in 1972 the Division of Unemployment and Temporary Disability Insurance was established. See L. 1972, pp. 1039, 1041; Brown v. Heymann, 62 N.J. 1 (1972). It assumed the powers of the former Division of Employment Security with respect to unemployment benefits. Thus, the functions of the Director of the Division of Employment Security under N.J.S.A. 43:21-16(d) have been transferred to the Director of the Division of Unemployment and Temporary Disability Insurance. N.J.S.A. 43:21-19(e). Accordingly, the Director of the new division performs his duties under N.J.S.A. 43:21-16(d) under the direction and supervision of the Commissioner. Further, the reorganization plan provides that "The Commissioner is the executive and administrative head of the Department of Labor and Industry and the Employment Security Agency. All powers and duties vested in his office or the Department are exercised and performed by him or under his supervision or control." Thus, the Commissioner in adopting the regulation has simply established guidelines within which the director exercises his discretion. The actual decision in a particular case remains the decision of the Director.
We see no substance at all to the argument that the regulation denies due process of law to appellants. It simply establishes criteria. The Legislature could have done this directly by statute. There is no suggestion in the regulation that a claimant is not entitled to a fair procedure to see if he is entitled to any benefit from the regulation. The point is clearly without merit. R. 2:11-3(e)(1)(E).
*539 In view of the foregoing we conclude that N.J.A.C. 12:17-10.1 et seq. is a valid regulation and accordingly the action of the Commissioner of Labor and Industry in adopting the regulation is affirmed. We have, of course, not passed on the application of the regulation to either appellant. Such a determination is beyond the issues raised on this appeal.
Affirmed.
NOTES
[1] Appellant Ellen Howard was a party in that action.